UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,

 -against-

RAFAEL ROMERO,

                    Defendant.

No. 88 Cr. 642 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

The Court is in receipt of Defendant Rafael Romero's application for compassionate release pursuant to 18 U.S.C. Section 3582(c)(1)(A), a copy of which is attached hereto.  Per Mr. Romero's request in his application, CJA Counsel shall be appointed to represent him in this matter.  CJA Counsel may supplement Mr. Romero's application for compassionate release no later than 30 days after the date of his/her appointment.  The Government shall file any opposition to Mr. Romero's request for compassionate release no later than 30 days after CJA Counsel files any supplemental papers.  CJA Counsel may file a reply no later than 14 days after the service of the Government's opposition.

**SO ORDERED.**

Dated:    New York, New York
          April 17, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA    ) Case No. 88-CR-642
                            )
        Plaintiff,          )
                            )
v.                          )
                            )
                            )
RAFAEL ROMERO               )
                            )
        Petitioner, Defendant. )

MOTION TO REDUCE SENTENCE PURSUANT TO
18 U.S.C. 3582 (c)(1)(A) AS AMENDED
BY THE FIRST STEP ACT OF 2018

    Defendant, Rafael Romero, Petitioner appearing in pro se,
humbly moves this court for a reduction in his sentence pursuant
to 18 U.S.C. 3582 (c)(1)(A) as amended by the First Step Act of
2018 for the reasons articulated in this motion and declaration
in support of the same.

I. PROCEDURAL BACKROUND

    On 3/14/1989, a jury found the Petitioner guilty of
conspiring with his two co-defendants to distribute more than
five kilograms of cocaine, 21 U.S.C. 846; possession of one
kilogram of cocaine with intent to distribute, 21 U.S.C. 812,
841(a) and 841(b)(1)(B); conspiring to murder a federal officer,
18 U.S.C. 1117; attempted murder of a federal officer, 18 U.S.C.
1111 and 1114; assaulting a federal officer with a deadly weapon,
18 U.S.C. 111; and use of a firearm during the course of a
narcotics trafficking offense, 18 U.S.C. 924(c).

    Mr. Romero was sentenced on May 25, 1989 to concurrent
sentences of life imprisonment on each of the conspiracy charges,
twenty years for attempted murder, ten years each for the
assault and possession of cocaine, as well as a consecutive

1

sentence of five years for the use of a firearm. The Second
Circuit affirmed the judgement of conviction on Febuary 20, 1990,
United States v. Romero, 897 F2d 47(2nd Cir.), cert.denied, 497
US 1010(1990). All of Petitioner's post conviction motions have
been denied.

## II. 18 U.S.C. 3582 (c)(1)(A)'s
### "Extraordinary and Compelling Reasons..."

The First Step Act of 2018 amended 18 U.S.C. Section 3582
(c)(1)(A) by permitting defendants to submit a motion for
modification of an imposed term of imprisonment to the court
after "the lapse of 30 days from the receipt of such a request by
the warden of the defendant's facility..." id. Defendant
submitted such a request to the warden of FCI Cumberland on
1/24/2020 and the lapse of 30 days from the warden's receipt of
his request has occurred, thus his motion is timely.

Due to the First Step Act amendments to Section 3582(c)(1)(A),
a court may now modify a defendant's sentence if it finds on
either the Bureau of Prison's or the defendant's motion that
"extraordinary and compelling reasons warrent such a reduction"
and "such a reduction is consistent with applicable policy
statements issued by the Sentencing Comission." Id. at 3582(c)(1)
(A)(i). The policy statement regarding compassionate release sets
forth three specific reasons that are considered "extraordinary
and compelling" as well as a catchall provision recognizing as
"extraordinary and compelling" any other reason "as determined
by the Director of the Bureau of Prisons." U.S. Sentencing
Guidelines Manual Section 1 B1.13 cmt.n.1.(U.S. SENTENCING COMM'N
2018). It also requires that "the defendant is not a danger to

the safety of any other person or to the community," and that the Court's determination is in line with "the factors set forth in 18 U.S.C. Section 3553(a)." id. at section 1 B1.13(2)&cmt.n.4.

That policy statement has not been amended since the passage of the First Step Act and some of it now clearly contradicts 18 U.S.C. 3852 (c)(1)(A). See id. at Section 1 B1.13 cmt.n.4. ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. Section 3582 (c)(1)(A)."); United States v. Overcash, 3:15-cr-263-FDW-1, 2019 U.S. Dist. LEXIS 57354, 2019 WL 1472104, at*2 (W.D.N.C. Apr. 3, 2019)("The Court agrees that Section 1 B1.13 now conflicts with Section 3582 insofar as a defendant is now able to request a sentence reduction upon a defendant's own motion rather than having to rely on the BOP Director.").

Although Congress empowered the Comission to issue policy statements regarding the appropriate use of the sentence-modification provisions under Section 3582, 28 U.S.C. Section 994(a)(2)(C), Congress may override the Comissions policy statement by statute. Because the Comission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the current statute, 28 U.S.C. 994(a)(2)(C), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority, as they no longer explain an appropriate use under the amended statute. For example, at least one provision of the Commission's previously proulgated policy statement is obviously contradicted by the First Step Act's amendments to Section 3582:

The unamended policy statement still advises that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S. Sentencing Guidelines Manual Section 1 B1.13 cmt.n.4.(U.S. Sentencing Comission, 2018). Yet section 3582 allows the court to grant a motion for extraordinary and compelling reasons upon a motion by the Director of the Bureau of Prisons or by the defendant. 18 U.S.C. 3582(c)(1)(A). The mandate that the Director of the BOP determine additional "extraordinary or compelling reasons likewise failed to explain an "appropriate use" under the newly amended Section 3582.

Before the First Step Act's amendments to Section 3582, it made logical sense that the BOP would have to determine any extraordinary and compelling reasons - only the BOP could bring motions under the statute. Currently, defendants no longer need the BOP's blessing to bring such motions. The BOP is likely never to weigh in or provide guidance at all when a motion is brought by a defendant. CF. Deluca v. Lariva, 586 F. App'x 239, 241(7th Cir. 2014) ("[W]hile the COP's interpretive Program Statement lists some factors the bureau may consider in determining whether to move for compassionate release, that list is non-exhaustive."

Given the changed to the statute, the policy statement provision that was previously applicable to 18 U.S.C. Section 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under Section 3582. The title of the First Step Act section that amends 18 U.S.C. 3582(c)(1)(A) lends

further weight to that conclusion. Titles are useful "when they
shed light on some ambiguous word or phrase," Brotherhood of R.R.
Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29, 67 S. Ct.
1387, 91 L. Ed. 1646 (1947), because in modern practice "the
title is adopted by the legislature." id. The title of the
section of the First Step Act of 2018 that amends 18 U.S.C. 3582
is "Increasing the Use and Transparency of Compassionate Release."
That title supports the reading that U.S.S.G. Section 1 B1.13 cmt.
n.1 (D) is not applicable when a defendant requests releif under
Section 3582(c)(1)(A) as amended because it no longer explains an
appropriate use of that statute. For if the Director of the BOP
were still the sole determiner of what constitutes an
"extraordinary and compelling" reason, the amendment's allowance
of defendant's own motions for reduction of sentence under
Section 3582(c)(1)(A) would be to no avail. Such a reading would
contravene the explicit purpose of the new amendments.

Applying the rule of lenity, U.S.S.G. Section 1 B1.13 cmt.n.
1 (D) no longer describes an appropriate use of sentence-
modifications and is thus not part of the applicable policy
statement binding the court. The rule of Lenity mandates that
when two rational readings of a statute are possible, the one
that treats the defendant less harshly prevails. See McNally v.
United States, 483 U.S. 350, 359-60, 107 S. Ct. 2875, 97 L. Ed.
2d. 292 (1987).

Thus, the correct interpretation of Section 3582(c)(1)(A)-
based on the text, statutory history and structure, and
consideration of Congress's ability to override any of the
Comission's policy statements "at any time," Mistretta v. United

States, 488 U.S. 361, 394, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)- is that when a defendant brings a motion for a sentence reduction under the amended provision, The Court can determine whether any "extraordinary and compelling reasons" other than those delineated in the U.S.S.G. Section 1 B1.13 cmt.n.1(A)-(C) warrent relief. Myriad district courts across the nation have come to the same conclusion. See, e.g., United States v. Gross, No. 2:04-CR-32-RMP, 2019 U.S. Dist. LEXIS 97933, 2019 WL2437463 (E.D. Wash. June 11, 2019); United States v. Beck, 1:13-cr-186-6 (M.D.N.C., June 28, 2019); United States v. Cantu, no. 1:05-CR-458-1, 2019 U.S. Dist. LEXIS 100923, 2019 WL 249823 (S.D. Tex. June 17, 2019; United States v. Cantu-Rivera, (Cr. No. H-89-204) (S.D. Tex. June 24, 2019); United States v. UrKevich, (8:03-CR-37, 2019 WL 6037391, District of Nebraska, November 14, 2019); United States v. Marks, No. 6:03-CR-06033 (W.D.N.Y. Mar. 14, 2019); United States v. Maumau, (No. 2:08-CR-00758-TC-11)(D. Utah Feb. 18, 2020).

### III. EXTRAORDINARY AND COMPELLING REASONS WARRANTING REDUCTION OF DEFENDANT"S SENTENCE

#### A. Sentencing Disparity

The statute "does [not] define-or place any limits on- what 'extraordinary and compelling reasons' might warrent such a reduction." Crowe v. United States, 430 F. App'x 484, 485(6th Cir 2011). Black's Law Dictionary, however defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," Extraordinary, Black's Law Dictionary (10th ed. 2014), and extrapolating from its definition of "compelling need," a compelling reason is one "so great that irreparable harm or

injustice would result if [the releif] is not [granted]," see
Compelling Need, Black's Law Dictionary(10th ed. 2014).

In the instant case, defendant's most viable extraordinary
and compelling reason warranting relief-a sentence reduction-
is sentencing disparity. Specifically, defendant asserts that the
November 1989 amendment to the Sentencing Guidelines -Amendment
123-, clarifying U.S.S.G. Section 2 D1.1(a)(2) under which he was
sentenced, created a material sentencing disparity between he and
those similarly situated defendants who comitted the same crimes
since the inception of Amendment 123 three decades ago. Due to
Amendment 123, the Sentencing Comission stopped applying the
serious bodily injury enhancement to drug and conspiracy-to-
murder cases unless the drugs were "ingested" by the victim.

Considering the facts in Romer's case, the victim was shot
by Romer's co-defendant. The victim did not die nor was the
victim caused serious bodily injury as a result of injesting or
using any drugs that Romero or his co-defendants possessed or
distributed.

It is only due to attorney err that Romero did not recieve
the benefit of U.S.S.G. 123 which would have already rendered him
a free man. On May 1, 1989, twenty-four (24) days before the
initially scheduled date of Romero's Sentencing, the U.S.
Sentencing Commission submitted to Congress for approval sought
to amend Section 2D1.1(a)(2) to provide that the B.O.L. shall
be... 38, if the defendant is convicted under 28. U.S.C. Section
841(b)(1)(A), (b)(1)(B), or 21 U.S.C. Section 960(b)(1), (b)(2),
or (b)(3), and the offense of conviction establishes that death
or serious bodily injury resulted from the use of the substance..

U.S.S.G. Appendix C, Amendment 123.

Had Romero's sentencing been continued until Amendment 123 became effective, on November 1, 1989, his Base Offense Level under the controlled substance sentencing guidelines would have been 26 rather than 38, and his then-mandatory guidelines sentencing range for all counts of conviction would have been 246-295 months rather than LIFE. This is because neither death nor serious bodily injury resulted from the use of a controlled substance in Romer's case. Romcer's attorney should have known this as notice regarding Amendment 123 was published in the Federal Register within a week of its submission to Congress.

Romero's attorney's error had yet another detrimental consequence in that Romero could have successfully moved the Court for a reduction in his sentence pursuant to Amendment 782 because, unlike now, Amendment 782 would have resulted in a different sentencing range. Romero requests that the Court consider the injustice of serving a LIFE sentence due to attorney err as one of the various "extraordinary and compelling" reasons warrenting a reduction in his sentence in addition to the above articulated sentencing disparity.

Since the passage of the First Step Act of 2018, many courts have granted releif pursuant to 18 U.S.C. 3582(c)(1)(A) based on extraordinary and compelling reasons including sentencing disparity. For instance in United States v. Maumau, (No. 2:08-cr-00758-TC-11)(D.Utuh Fed. 18, 2020), the defendant, Mr.Maumau, was sentenced to 57 years in prison for various offenses including three "stacked" Section 924(c) sentences resulting in a mandatory

8

minimum of 55 years of imprisonment. Taking into consideration
the fact that the First Step Act changed how 924(c) sentences are
calculated and the resulting sentencing disparity that resulted,
the court granted Maumau a sentence modification upon a full
resentencing hearing. The Court Stated: "Based on the above, the
Court concedes that a combination of factors,  Mr.Maumau's young
age at the time of the sentence, the incredible length of the
mandatory sentence imposed, and the fact that, if sentenced today,
he would not be subject to such a long term of imprisonment
establish an extraordinary and compelling reason to reduce
Mr. Maumau's sentence..."

Here, it is important to note that the First Step Act of
2018 <u>did not</u> make retroactive the change to 18 U.S.C. 924(c).
Similarly, Amendment 123 to the Sentencing Guidelines was not
included in the Sentencing Comission's policy statement governing
retroactive application of a sentence under an amended guideline
range. Nevertheless, the Court in Maumau determined: "It is not
unreasonable for Congress to conclude that not all defendants
convicted under Section 924(c) should recieve new sentences, even
while expanding the power of the courts to relieve some
defendants of those sentences on a case-by-case basis."

In Brown, 2019 U.S. Dist. LEXIS 175424, 2019 WL 4942051(No.
4:05-CR-00227-1)(S.D. Iowa, October 8, 2019), the Court
acknowledged it could consider as "extraordinary and compelling
reasons" for sentence reduction the disparity the defendant
suffered when he recieved a 300-month sentence on a firearm count
that today would carry a 60-month sentence(citing United States v.
Marks, No. 6:03-cr-06033, slip op.(W.D.N.Y. Mar 14, 2019)).

9

As with the above listed cases, in United States v. Urkevich, (8:03-CR-37, 2019 WL 6037391, Dist. of Nebraska, November 14, 2019), the Court found extraordinary and compelling reasons warranting a sentence reduction due to a sentence disparity, "specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed." In the Urkevich case, the defendant was sentenced to 368 months, a sentence which included consecutive stacked Section 924(c)(1)(C) counts - 60 months plus 300 months plus 300 months for three Section 924(c) counts.

The Court resentenced Urkevich to concurrent 60 months sentences for each of his Section 924(c) convictions which is what a conviction for the same offenses would require after the passage of the First Step Act of 2018. The Court found such a sentence consistent with all the factors set forth in 18 U.S.C. Section 3553(a), and especially Section 3553(a)(6)("The need to avoid unwarrented sentence disparities among defendants with similar records who have been found guilty of similar conduct").

### B. REHABILITATION OF THE DEFENDANT

"Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." Application Note 4, U.S.S.G. Section 1 B1.13. See also 28 U.S.C. Section 994(+). Nevertheless, postsentencing rehabilitation should be considered in conjuction with the other factors to constitute, in their entirety, such extraordinary and compelling reasons. See Pepper v. United States, 562 U.S. 476, 490-91, 131 S. Ct. 1229, 179 L. Ed 2d 196 (2011)("evidence of postsentencing may be highly relevant to several of the Section

3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.") See also United States v. Cantu-Rivera, (Cr. No. H-89-204)(SD Tex. June 24, 2019), footnote no. 2.

Defendant has exhibited extraordinary rehabilitation as expressed in his declaration. He urges the Court to consider his extensive efforts at rehabilitation in conjuction with the other relevant factors he has submitted in determining whether and to what extent to grant him a reduction of his sentence.

## C. OTHER REASONS WARRENTING
## A SENTENCE MODIFICATION

Defendant is experiencing deteriorating health due to decades of incarceration and the aging process. His ailments include diabetes and although none of his health related concerns are imminently terminal, the Court should take into consideration defendant's health issues in conjuction with the other reasons he is submitting to the Court in support of his requests for releif.

Defendant further requests that the Court consider the totality of the circumstances and his individual culpability in his case based on the evidence. The facts submitted to the jury show that defendant brokered a drug deal between a C.I. and parties he knew to distribute large amounts of drugs. Admittedly, this is a terrible crime but Romero had no idea that anyone would be harmed (much less a federal agent) in the process of the transaction. Romero had no prior record and was a drug user himself at the time. He had no pecuniary interest in the transaction nor did he own any of the drugs involved. The sin which has thus far cost him over three decades of his freedom was

the crime of connecting a buyer with a seller of illicit drugs.

The awful decision to do the above crime was made when the defendant was only 27 years old, an immigrant, and an avid drug user. At no time did Romero intend to commit any violent act yet, inadvertantly, in a drug deal gone horribly wrong, a federal agent was shot by another man with a gun whose only tie to Romero was the drug transaction itself. Should such a poor decision made by Romero lead to two LIFE sentences? Is a sentence of two LIFE sentences just and fair when the defendant lacked intent, lacked mens rea?

The fact that Santos, the actual shooter, remained hidden in the closet when he heard Rodriquez struggling with the federal agents sheds light on whether there was an agreement to murder anyone. The fact that Santos remained hidden in the closet until Agent Travers opened the door the second time supports the inference that he acted spontaneously, not pursuant to any agreement to commit murder. The logical object of the meeting between the C.I. and the dealers that Romero orchestrated was a money for drugs transaction, not violence. This is what the evidence produced at Romero's trial showed. The Court should consider the actual level of Romero's culpability in the alleged conspiracy to commit murder in its consideration of his request for a reduction of his sentence.

Finally, Romero prays that the Court will consider his age (59 years old this year) and the fact that he has been rehabilitated, educated, matured and is apologetic for his crimes. He has found spirituality, is an active member in the prison's

church and is no longer the man he was 31 years ago when he made the mistakes that ruined his life.

Romero has also proved to the BOP that he now possesses an "outstanding work ethic," is a "dependable leader" and "reliable." See Declaration and exhibits.

Accordingly, the Court should grant Romero's motion and schedule a resentencing hearing whereas the Court may hear directly from Romero and the Probation Office can file a recommendation with the Court. Defendant also humbly requests that the Court appoint counsel to assist him in this matter as he is indigent and unexperienced at law.

Dated: 3/19/2020

Respectfully Submitted,

Rafael Romero

RAFAEL ROMERO

alignment

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA    ) Criminal Action No. 88-CR-642
                   )
     Plaintiff,        )
                   )
v.                    )
                   )
                   )
RAFAEL ROMERO,        )
                   )
     Defendant,        )

### DECLARATION OF RAFAEL ROMERO IN SUPPORT OF
### MOTION TO REDUCE SENTENCE PURSUANT TO
### 18 U.S.C. 3582 (c)(1)(A) AS AMENDED
### BY THE FIRST STEP ACT OF 2018

### DECLARATION OF RAFAEL ROMERO

In accordance with the privsions of Section 1746 of Title 28, United States Code, I, the undersigned, Rafael Romero, do hereby make the following declaration pertinent to the above styled motion:

1. I am the defendant in this criminal case.

2. I make this declaration in support of my motion to reduce sentence described above.

3. Exhibit A is my Program Review report obtained from the Bureau of Prisons on 1/28/2020. As shown, I have completed dozens of classes in an effort to rehabilitate myself through education.

4. I have overcome my issues related to my former drug use by recieving drug education -see Exhibit A- and my becoming a Christian while incarcerated.

5. I became English proficient while in prison via hard work and study. See Exhibit A.

6. I earned my G.E.D. in prison and have also obtained

14

vocational skills by my employment in UNICOR for over twenty-five years at five different institutions.

7. My UNICOR employment has provided me with skills that I may utilize upon release including dental assistant training and tailoring. I am immediately employable upon release.

8. My prison record reflects the fact that I am not in any way violent and I have not been involved in any altercation in the 31 years that I've been incarcerated.

9. Exhibit B is a portion of the numerous UNICOR WORK PERFORMANCE EVALUATION RECORD's I've recieved during my twenty-five years of employment in UNICOR. My UNICOR supervisors have regularly described me as a "dependable leader" with "outstanding work ethic," a "reliable" employee who pays "attention to detail." See Exhibit B.

10. During my three decades in prison, I have continued to maintain family ties. My brother and daughter have both agreed to provide me with a place to live upon my release with them at 1525 Townsend Ave., #4C, Bronx, New York, 10452.

11. At the time of my offense, I was a young man, only 27 years old and easily influenced by my older associates. Now that I am much older -59 years old on March 29th- I've matured, found religion, and through my faith in God, became a new man. I am no longer the person I was when I made the foolish decision to broker a drug purchase three decades ago.

12. I am deeply remorseful for the harm I caused by my poor

decision that fateful day and not a day goes by that I do not regret what happened.

13. Though I know that I am guilty of a most awful crime involving a sale of a large amount of drugs, I never once intended for Agent Travers -a man I'd never even met or had cause to harm- to get hurt. I realize that Mr. Travers would never have been harmed had I not brokered the drug transaction in this case and the fact that he was shot continues to haunt me to this day. I am so very sorry for my actions and sorry for Mr. Travers injury. I pray he will one day find forgiveness in his heart for me.

14. I beg your Honor to consider the fact that the trial evidence attests to the fact that I was never even aware that any weapon at all would be present at the apartment where Agent Travers was shot. I further assert this truth: I was never ever aware of any gun being involved in the drug transaction I brokered. Nevertheless, I have two life sentences for a single drug transaction when I have no other criminal history, no actual nor constructive possession of any weapon, and have never in my life ever personally harmed another person.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3/19/2020

By: RAFAEL ROMERO

16

# Attachment A

BP-A0148
JUNE. 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) WARDEN, FCI Cumberland | DATE: 1/24/2020 |
|---|---|
| FROM: RAFAEL ROMERO | REGISTER NO.: 18225-054 |
| WORK ASSIGNMENT: UN2·a | UNIT: b1- D03 - 2032 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I am requesting that the B.O.P. assist me with my motion to reduce sentence pursuant to 18.US.C. 3582(c)(1)(A) as amended by the FIRST STEP ACT OF 2018. Specifically I am requesting that the B.O.P. submit a request to the court via motion to reduce my sentence for the reasons articulated in the attached papers, the sentencing disparity between my LIFE sentence and those convicted since the time I was convicted, and due to my rehabilitation efforts, I believe extraordinary and compelling circumstances exist in my situation and that I qualify for compassionate relief.

(Do not write below this line)

DISPOSITION:

See Attached

| Signature Staff Member | Date 2/3/2020 |
|---|---|

Record Copy - File; Copy - Inmate

PDF                                     Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

SECTION 6

Dated: 1/24/2020

Warden,

The following extraordinary and compelling reasons warrent a
sentence reduction and I am requesting that the B.O.P. assist me
in obtaining such by submitting a motion to the Court for a
reduction in sentence pursuant to 18 U.S.C. 3582 (c)(1)(A), as
amended by the First Step Act of 2018.

On May 25, 1989, I was sentenced to life imprisonment for
violations of 21 U.S.C. 848, 21 U.S.C. 812, 841 (A)(i), 18 U.S.C.
924 (c), 18 U.S.C. 111, 18 U.S.C. 117, and 18 U.S.C. 1114. See
case no. 88-cr-642.

I have served over 30 years of prison and have matured a
great deal. My prison record shows my extraordinary
rehabilitation. I've worked for UNICOR for over 25 years without
incident and my supervisors can attest to my good work ethic. I
will be 60 years old next year.

I have found peace and happiness in my faith. By this faith
in God, I have been transformed into a wholly new person and I
see the error of my past ways.

I now suffer from diabeties and am in poor health but I do
have support of my brother and my daughter. My proposed home plan
is to live with my family at San Cristobal, Dominican Republic.
This is my daughter's residence and she has agreed to allow me
to reside with her upon my release.

The primary reason I beleive that the Court should grant me
a sentence reduction is the extraordinary degree of my
rehabilitation combined with the injustice of facing a term of
incarceration forty years longer than Congress now deems warrented
for the crimes committed.

If I were sentenced for the same crimes today, as opposed to
1989, I would have a guideline range of 108-135 months (31 points
with a Criminal History Catagory of I) and I would have been
released years ago. This is due to U.S.S.G. Appendix C, Amendment
123 which went into effect on November 1, 1989, roughly six
months after I was sentenced.

Courts have determined that sentencing disparity can be an

17

"extraordinary and compelling" reason warranting a sentence
reduction under 18 U.S.C. 3582 (c)(1)(A), as amended by the First
Step Act of 2018. See United States v. Urkevich, (8:03-CR-37;
2019 WL 6037391, District of Nebraska, November 14, 2019); see
also United States v. Cantu, (No. 1:05-CR-458-1), 2019
WL 2498923 (S.D. Tex. June 17, 2019); and United States v. Cantu-
Rivera, (Cr. No. H-89-204)(S.D. Tex. June 24, 2019).

At the time of my sentencing, the guidelines were mandatory
and due to this fact I was given a mandatory life sentence. The
laws have changed and I would no longer face a life sentence for
the same crimes if I were sentenced today, thus this represents a
sentencing disparity.

In addition to the above, Amendment 591 and Amendment 782 to
the sentencing guidelines also warrant a reduction in sentence
for me. If these above factors are considered as a whole, I
believe the Court should feel compelled to reduce my sentence to
time served.

Accordingly, I'm requesting that the Bureau of Prisons
submit a motion to the Court for the reduction of my sentence
pursuant to 18 U.S.C. 3582 (c)(1)(A).

RAFAEL ROMERO
Prisoner No. 18225-054

# EXHIBIT A



| Individualized Reentry Plan - Program Review  (Inmate Copy) | | | SEQUENCE: 00319561 |
|---|---|---|---|
| Dept. of Justice / Federal Bureau of Prisons | | | Team Date: 01-28-2020 |
| Plan is for inmate: ROMERO, RAFAEL   18225-054 | | | |

| | | | |
|---|---|---|---|
| Facility: | CUM  CUMBERLAND FCI | Proj. Rel. Date: | UNKNOWN |
| Name: | ROMERO, RAFAEL | Proj. Rel. Mthd: | LIFE |
| Register No.: | 18225-054 | DNA Status: | CUM03254 / 05-24-2011 |
| Age: | 58 | | |
| Date of Birth: | 03-29-1961 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| INVESTIGATION FOR DEPORTATION | null |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| CUM | FPI ASMB | UNICOR ASMB | 07-17-2012 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| CUM | ESL HAS | ENGLISH PROFICIENT | 06-27-1991 |
| CUM | GED EARNED | GED EARNED IN BOP | 06-01-1991 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| CUM | C | PERSONAL CAREER DISCOVERY | 01-19-2016 | 05-17-2016 |
| CUM | C | CRC COLLEGE PREP CLASS | 01-14-2016 | 01-14-2016 |
| CUM | C | 3 STEPS TO INCREDIBLE HEALTH | 05-16-2015 | 05-16-2015 |
| CUM | C | COMPUTER TYPING CLASS | 12-08-2014 | 02-12-2015 |
| CUM | C | PHOTO REALISM | 09-19-2013 | 12-05-2013 |
| CUM | C | HOBBY CRAFT PARTICIPATION | 09-23-2013 | 09-23-2013 |
| CUM | C | DRAWING PORTRAITS | 01-17-2013 | 04-04-2013 |
| CUM | C | BASIC LEATHER CRAFT CLASS | 01-15-2013 | 03-24-2013 |
| CUM | C | FCI ORIGAMI 2 | 07-13-2012 | 08-10-2012 |
| CUM | C | FCI ORIGAMI | 05-28-2012 | 06-27-2012 |
| CUM | C | HIV AWARENESS WORKSHOP | 09-08-2010 | 09-08-2010 |
| CUM | C | LEXIS NEXIS WORKSHOP | 07-14-2010 | 07-21-2010 |
| CUM | C | BAISC WIRING | 04-29-2008 | 07-05-2008 |
| CUM | C | BUSINESS ADMINISTRATION | 04-28-2008 | 07-02-2008 |
| SCH | C | ENGLISH AS A SECOND LANGUAGE | 10-28-2004 | 01-31-2005 |
| SCH | C | FRENCH FOR ENG SPEAKING I/M | 12-07-2001 | 02-03-2002 |
| SCH | C | FCI PRE-RELEASE DRUG EDUCATION | 10-12-1993 | 12-20-1993 |
| SCH | C | 7 STEPS TO A POSITIVE ATTITUDE | 04-04-2000 | 05-26-2000 |
| SCH | C | ACE SMALL BUSINESS | 01-31-2000 | 03-16-2000 |
| SCH | C | FCI PAR 1A - PARENTING ONE | 07-08-1999 | 09-29-1999 |
| LEW | C | LEISURE ACTIVITY/LEATHER CRAFT | 11-20-1997 | 07-12-1999 |
| ATL | C | T/TH 7-9 INST. FALL '92 | 01-30-1993 | 01-30-1993 |
| ATL | C | M/W 7-9 INST. FALL '92 | 01-30-1993 | 01-30-1993 |
| MNA M | W | WORDPERFECT 1435-1530 | 07-10-1992 | 11-11-1992 |
| MNA M | W | INDEP COLLEGE-LEVEL STUDIES | 07-17-1992 | 11-10-1992 |
| MNA M | W | 9:40-1115 ESL INTERMEDIATE M-F | 12-01-1990 | 02-02-1991 |
| MNA M | C | TYPING LEVEL TWO | 08-17-1990 | 09-14-1990 |
| MNA M | W | ENGLISH/SECOND LANGUAGE | 03-16-1990 | 05-04-1990 |
| MNA M | C | ENGLISH/SECOND LANGUAGE | 09-01-1989 | 03-16-1990 |
| OTV | C | GENERAL EDUC DEVELOPMENT | 04-20-1989 | 05-17-1989 |
| OTV | C | BASIC ESL - MORNING | 04-17-1989 | 05-12-1989 |
| OTV | C | TESTING PROGRAM - AFTERNOONS | 04-17-1989 | 04-24-1989 |
| OTV | C | TESTING PROGRAM - AFTERNOONS | 01-12-1989 | 01-18-1989 |
| OTV | W | BASIC ESL - MORNING | 01-05-1989 | 01-19-1989 |
| NYM M | W | ENGLISH AS A SECOND LANGUAGE | 10-14-1988 | 12-27-1988 |

## Discipline History (Last 6 months)



## Individualized Reentry Plan - Program Review  (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: ROMERO, RAFAEL  18225-054

SEQUENCE: 00319561

Team Date: 01-28-2020

| Hearing Date | Prohibited Acts |
|---|---|

*\*\* NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS \*\**

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 10-25-2010 |
| CARE2 | STABLE, CHRONIC CARE | 01-24-2005 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO F/S | NO FOOD SERVICE WORK | 08-09-1999 |
| REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 02-02-1998 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DRG E COMP | DRUG EDUCATION COMPLETED | 12-20-1993 |
| DRG I NONE | NO DRUG INTERVIEW REQUIRED | 04-13-1995 |

### FRP Details

Most Recent Payment Plan

*\*\* NO FRP DETAILS \*\**

### Progress since last review

Continued in UNICOR. Did not complete any programs. Saved some money.

### Next Program Review Goals

Complete one CRC class (Personal Finances). Complete one wellness class (Walking, Phase 1). Save $70 for release funds. Participate in a Protestant religious program on a weekly basis. Participate in daily leisure time activities.

### Long Term Goals

Maintain weekly contact with family and friends via e-mail, mail, and phone. Seek out psychology services, as needed. Maintain clear conduct and good sanitation.

### RRC/HC Placement

### Comments

Has a financial/poverty skills need.

# EXHIBIT B

# UNICOR WORK PERFORMANCE EVALUATION RECORD

NAME: **ROMERO, RAFEAL**
LAST, FIRST, MIDDLE INITIAL

REGISTER NUMBER: **18225-054**

[4][0][5]
INSTITUTION CODE

[1][1][6][3]
INDUSTRY CODE

[7][0][6][6][8][7][0][1][0]
WORK ASSIGNMENT DOT CODE

M M D D Y Y
[0][4][0][1][1][3]
EVALUATION BEGIN DATE
RATING SCALE: 1=MUCH WORSE THAN AVERAGE
4=BETTER THAN AVERAGE

M M D D Y Y
[0][9][3][0][1][3]
EVALUATION END DATE
2=WORSE THAN AVERAGE          3=AVERAGE
5=MUCH BETTER THAN AVERAGE

INMATE INITIAL

SUPERVISOR INITIAL

| SAFETY | QUALITY ASSURANCE | PERSONAL CONDUCT/HYGIENE | PUNCTUALITY/PRODUCTIVITY | COMPLIANCE with WORK STANDARDS | TOTAL |
|---|---|---|---|---|---|
| [4] | [5] | [5] | [5] | [5] | [2][4] |

COMMENT: Outstanding work ethic
Dependable, Leader
Thank you!

---

[4][0][5]
INSTITUTION CODE

[1][1][6][3]
INDUSTRY CODE

[7][0][6][6][8][7][0][1][0]
WORK ASSIGNMENT DOT CODE

M M D D Y Y
10/1/2013
EVALUATION BEGIN DATE
RATING SCALE: 1=MUCH WORSE THAN AVERAGE
4=BETTER THAN AVERAGE

M M D D Y Y
3/1/2014
EVALUATION END DATE
2=WORSE THAN AVERAGE          3=AVERAGE
5=MUCH BETTER THAN AVERAGE

INMATE INITIAL

SUPERVISOR INITIAL

| SAFETY | QUALITY ASSURANCE | PERSONAL CONDUCT/HYGIENE | PUNCTUALITY/PRODUCTIVITY | COMPLIANCE with WORK STANDARDS | TOTAL |
|---|---|---|---|---|---|
| [4] | [5] | [5] | [5] | [5] | [2][4] |

COMMENT: Continued reliability and
attention to detail.
Thank you!

# UNICOR WORK PERFORMANCE EVALUATION RECORD

NAME: **ROMERO, RAFEAL**
LAST, FIRST, MIDDLE INITIAL

REGISTER NUMBER: 18225-054

[4][0][5]
INSTITUTION CODE

10 / 1 / 2011
M M D D Y Y

[0][4][0][1][1][1]
EVALUATION BEGIN DATE

RATING SCALE: 1=MUCH WORSE THAN AVERAGE
4=BETTER THAN AVERAGE

[1][1][6][3]
INDUSTRY CODE

[7][0][6][6][8][7][0][1][0]
WORK ASSIGNMENT DOT CODE

3 / 31 / 2012
M M D D Y Y

[0][9][3][0][1][1]
EVALUATION END DATE

2=WORSE THAN AVERAGE     3=AVERAGE
5=MUCH BETTER THAN AVERAGE

( R-R- )
INMATE INITIAL

( SL )
SUPERVISOR INITIAL

| SAFETY | QUALITY ASSURANCE | PERSONAL CONDUCT/HYGIENE | PUNCTUALITY/PRODUCTIVITY | COMPLIANCE with WORK STANDARDS | TOTAL |
|---|---|---|---|---|---|
| 4 | 4 | 4 | 4 | 4 | 20 |

COMMENT: _____

_____

_____

·········

[4][0][5]
INSTITUTION CODE

[1][1][6][3]
INDUSTRY CODE

[7][0][6][6][8][7][0][1][0]
WORK ASSIGNMENT DOT CODE

M M D D Y Y
[0][4][0][1][1][1]
EVALUATION BEGIN DATE

RATING SCALE: 1=MUCH WORSE THAN AVERAGE
4=BETTER THAN AVERAGE

M M D D Y Y
[0][9][3][0][1][1]
EVALUATION END DATE

2=WORSE THAN AVERAGE     3=AVERAGE
5=MUCH BETTER THAN AVERAGE

( R.M )
INMATE INITIAL

( SL )
SUPERVISOR INITIAL

| SAFETY | QUALITY ASSURANCE | PERSONAL CONDUCT/HYGIENE | PUNCTUALITY/PRODUCTIVITY | COMPLIANCE with WORK STANDARDS | TOTAL |
|---|---|---|---|---|---|
| 4 | 4 | 4 | 4 | 4 | 20 |

COMMENT: _____

_____

_____



# UNICOR WORK PERFORMANCE EVALUATION RECORD

**NAME:** ROMERO, RAFEAL
(LAST, FIRST, MIDDLE INITIAL)

**REGISTER NUMBER:** 18225-054

| 4 0 5 | 1 1 6 3 | 7 0 6 6 8 7 0 1 0 |
|---|---|---|
| INSTITUTION CODE | INDUSTRY CODE | WORK ASSIGNMENT DOT CODE |

M M D D Y Y
1 0 0 1 0 9
**EVALUATION BEGIN DATE**

M M D D Y Y
0 3 3 1 1 0
**EVALUATION END DATE**

Rating Scale: 1=Much Worse than Average  2=Worse than Average  3=Average
4=Better than Average  5=Much Better than Average

( R M )
Inmate Initials

( SL )
Supervisor Initials

Comments: _____

|  | Salary | Quality Assurance | Personal Conduct/Hygiene | Punctuality/Productivity | Compliance with Work Standards |  |  |  |  |  |  | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 3 | 4 | 3 | 3 | 4 |  |  |  |  |  |  | 17 |

SL 17

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

| 4 0 5 | 1 1 6 3 | 7 0 6 6 8 7 0 1 0 |
|---|---|---|
| INSTITUTION CODE | INDUSTRY CODE | WORK ASSIGNMENT DOT CODE |

M M D D Y Y
0 4 0 1 1 0
**EVALUATION BEGIN DATE**

M M D D Y Y
0 9 3 0 1 0
**EVALUATION END DATE**

Rating Scale: 1=Much Worse than Average  2=Worse than Average  3=Average
4=Better than Average  5=Much Better than Average

( R M )
Inmate Initials

( SL )
Supervisor Initials

Comments: _____

|  | Salary | Quality Assurance | Personal Conduct/Hygiene | Punctuality/Productivity | Compliance with Work Standards |  |  |  |  |  |  | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 4 | 4 | 4 | 4 | 4 |  |  |  |  |  |  | 20 |

ORIGINAL - Stays with UNICOR
Copies - One copy to Case Manager after each Evaluation Period

FPI-44
Rev. 11/95



CAPTION: United States District Court for the Southern District of New York

United States of America

## UNICOR WORK PERFORMANCE EVALUATION RECORD

NAME: ROMERO, RAFEAL
(LAST, FIRST, MIDDLE INITIAL)

REGISTER NUMBER: 18225-054

| 1 4 0 5 | 1 1 6 3 | 9 7 9 6 8 4 0 3 4 |
|---|---|---|
| INSTITUTION CODE | INDUSTRY CODE | WORK ASSIGNMENT DOT CODE |

M M D D Y Y
1 0 0 1 0 8
**EVALUATION BEGIN DATE**

M M D D Y Y
0 3 3 1 0 9
**EVALUATION END DATE**

Rating Scale: 1=Much Worse than Average    2=Worse than Average    3=Average
4=Better than Average     5=Much Better than Average

( R T )
Inmate Initials

( KAR )
Supervisor Initials

Salary/Safety | Quality Assurance | Personal Conduct/Hygiene | Punctuality/Productivity | Compliance with Work Standards | Total

4 4 5 4 5 | 2 2

Comments: Trys very hard to do a good job and learn.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

R T
R 7D6687 D1D  DOT CODE CHANGE
9 7 9 6 8 4 0 9 4

| 1 4 0 5 | 1 1 6 3 | 9 7 9 6 8 4 0 9 4 |
|---|---|---|
| INSTITUTION CODE | INDUSTRY CODE | WORK ASSIGNMENT DOT CODE |

M M D D Y Y
0 4 0 1 0 9
**EVALUATION BEGIN DATE**

M M D D Y Y
0 9 3 0 0 9
**EVALUATION END DATE**

Rating Scale: 1=Much Worse than Average    2=Worse than Average    3=Average
4=Better than Average     5=Much Better than Average

( R M )
Inmate Initials

( SR )
Supervisor Initials

Salary/Safety | Quality Assurance | Personal Conduct/Hygiene | Punctuality/Productivity | Compliance with Work Standards | Total

3 3 3 3 3 | 1 5T

Comments: _____

RECEIVED
MAR 20 2020
U.S.D.C.
W.P.

CAPTION: United States District Court for the Southern District of New York

United States of America

**CERTIFICATE OF SERVICE***

Docket Number: 1:88-CR-00642-LAP-1

v.

Rafael Romero

I, Rafael Romero , hereby certify under penalty of perjury that

on March 19, 2020 , I served a copy of defendant's Motion

for Reduction in Sentence pursuant to 18 USC 3582(c)(1)(A)

(list all documents)

by (select all applicable)**

___ Personal Delivery      X United States Mail      ___ Federal Express or other
                                                         Overnight Courier

___ Commercial Carrier     ___ E-Mail (on consent)

on the following parties:

U.S. Attorney, One St. Andrews Plaza, New York, NY 10007

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or
proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously
filed.

**If different methods of service have been used on different parties, please complete a separate
certificate of service for each party.

3/19/2020
Today's Date

Rafael Romero
Signature

Certificate of Service Form (Last Revised 12/2015)